CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 19 2008
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CANDACE R. WILLIAMS, | ) |
| Plaintiff, | ) Civil Action No. 5:07CV00052 |
| v. | ) **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, | ) By: Hon. Glen E. Conrad |
| Commissioner of Social Security, | ) United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff was not under a disability at any time prior to the final decision of the Commissioner. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Candace R. Williams, was born on April 16, 1973. She eventually completed at least two years of college, and she obtained a certificate in blueprint reading, estimation, and drafting. Ms. Williams has past relevant work experience as a fast food worker/cashier/counter clerk, quality control inspector, general laborer, and cosmetology assistant. Ms. Williams filed applications for disability insurance benefits and supplemental security income benefits on February

1, 2005. She alleged that she became disabled for all forms of substantial gainful employment on May 1, 2001,[1] due to vision and breathing problems resulting from sarcoidosis. Ms. Williams now maintains that she has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that Ms. Williams met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, gen., 42 U.S.C. § 423.

Ms. Williams' claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated January 26, 2007, the Law Judge also determined that Ms. Williams is not disabled. The Law Judge found that plaintiff's impairments are severe within the meaning of the regulations, but that they do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. §§ 404.1520(c)-(d) and 416.920(c)-(d). Based on his review of the entire record, the Law Judge found that Ms. Williams retains the following residual functional capacity:

> [T]he claimant has the residual functional capacity to do light work (lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk about 6 hours in an 8-hour day, and sit about 6 hours in an 8-hour day) that involves only occasional postural activities (climb, balance, stoop, kneel, crouch, and crawl), that avoids even moderate exposure to asthma irritants (such as fumes, dust and gases), that avoids concentrated exposure to workplace hazards (such as unprotected heights or moving machinery), and that accommodates vision in only one eye.

---

[1] The record reveals that Ms. Williams continued working past her alleged onset date of disability. The Law Judge found, however, that the work performed by plaintiff after her alleged onset date did not constitute substantial gainful employment. (Tr. 15). See 20 C.F.R. §§ 404.1520(b) and 416.920(b).

2

(Tr. 16). After considering testimony from a vocational expert, the Law Judge ruled that Ms. Williams retains sufficient functional capacity to return to her past relevant work as a fast food cashier/counter clerk, quality control inspector, general laborer, or cosmetology assistant. Accordingly, the Law Judge ultimately concluded that she is not entitled to benefits under either federal program. See 20 C.F.R. §§ 404.1520(f) and 416.920(f). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all administrative remedies, Ms. Williams has now appealed to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Ms. Williams' medical problems and the extent to which they affect her ability to work. Although Ms. Williams suffers from several impairments related to her

sarcoidosis, substantial evidence supports the Law Judge's determination that she retains the residual functional capacity to perform a limited range of light work.

The record reveals that Ms. Williams received medical care at the University of Virginia Health System (UVA) from February of 2001 to May of 2006. (Tr. 178-179, 187-394, 501-502, 556-578). On February 15, 2001, plaintiff saw Dr. Richard Enelow for an evaluation of the need for steroid therapy. Dr. Enelow's examination notes indicate that plaintiff had a four-year history of sarcoidosis,[2] that she had been seeing an ophthalmologist for uveitis,[3] that an outside pulmonologist had been treating her with steroids, and that plaintiff's symptoms had worsened when she decided to taper herself off of the steroids due to weight gain. Plaintiff's respiratory examination revealed that her lungs were completely clear bilaterally with no evidence of wheezing, but her pulmonary function tests showed that she was "somewhat symptomatic." (Tr. 391).

Dr. Enelow subsequently adjusted plaintiff's medications, and on April 12, 2001, plaintiff reported that she felt better. (Tr. 382-283). Dr. Enelow noted that he was "pleased to report that her pulmonary function tests [had] improved . . . dramatically," and that he strongly believed that her worsening respiratory symptoms could be attributed to a respiratory tract infection. (Tr. 383). A respiratory examination performed a week later revealed no abnormalities. (Tr. 381).

Plaintiff returned to Dr. Enelow on April 26, 2001. During the examination, plaintiff complained of chest tightness and coughing, which she related to her exposure to welding dust at work. Although her pulmonary function tests had fallen from previous levels, "plaintiff did not appear to be in any degree of respiratory distress." (Tr. 378).

---

[2] Sarcoidosis is a chronic, granulomatous disease of unknown cause, "involving almost any organ or tissue, including the skin, lungs, lymph nodes, liver, spleen, eyes, and small bones of the hands and feet." Dorland's Illustrated Medical Dictionary 1485 (27th Ed. 1988).

[3] Uveitis is an inflammation of the eye. Dorland's Illustrated Medical Dictionary at 1798.

4

On June 28, 2001, Ms. Williams' respiratory examination was normal, and she reported that she felt "rather well." (Tr. 374). Since plaintiff "seem[ed] to be doing clinically so well," Dr. Enelow decreased her dosage of Prednisone. (Tr. 375).

Dr. James Tiedeman performed surgery on plaintiff's left eye on December 28, 2001. The surgery consisted of the removal of scar tissue and a cataract, and the placement of a fixated intraocular lens. (Tr. 367, 371). Plaintiff tolerated the surgery well. (Tr. 372).

On April 11, 2002, Ms. Williams returned to UVA and advised Dr. Steven Koenig that she felt quite well from a pulmonary standpoint, and that her breathing was "the best it has ever been." (Tr. 356). Since the pulmonary effects of her sarcoidosis were "fairly mild," Dr. Koenig discontinued plaintiff's Prednisone therapy. (Tr. 357-358). On June 3, 2002, it was noted that plaintiff was "doing rather well off her steroids." (Tr. 343).

Ms. Williams saw Dr. Koenig again on April 23, 2003. Dr. Koenig noted that plaintiff's sarcoidosis had been generally asymptomatic until four to six weeks prior to the examination date, when she began to notice dyspnea on exertion and at rest. (Tr. 323). Consequently, Dr. Koenig started plaintiff on Methotrexate. (Tr. 325). The following month, Ms. Williams reported that her symptoms had improved, and that she tended to have more difficulty breathing when she was around fumes at the beauty salon where she was worked. (Tr. 312).

On September 11, 2003, Ms. Williams saw Dr. Tiedeman for an eye examination. Dr. Tiedeman diagnosed plaintiff with improving uveitis in the right eye and pre-phthisis[4] in the left eye. (Tr. 303).

---

[4] Phthisis is defined as a "wasting illness." Taber's Medical Cyclopedic Dictionary (2002), *available at* LexisNexis.

Plaintiff was examined by Dr. Sharon Esau at UVA on March 26, 2004. Dr. Esau noted that plaintiff had recently become pregnant, and that she was no longer taking any medications because her pulmonary functions tests had been stable. (Tr. 253). On that date, plaintiff's pulmonary function tests showed improvement, and Dr. Esau opined that she was "doing quite well from her lung function standpoint." (Tr. 253-254).

Ms. Williams was admitted to UVA for labor and delivery on October 21, 2004. (Tr. 178). Plaintiff's postpartum course was "completely uncomplicated," and her vital signs and physical examination were within normal limits. (Tr. 179).

On January 11, 2005, plaintiff returned to Dr. Esau with complaints of shortness of breath. Since plaintiff's pulmonary function tests were "a little bit down," Dr. Esau started her on a low dose of Prednisone. (Tr. 210). During a follow-up examination on July 7, 2005, plaintiff's chest was clear to auscultation, and her pulmonary function tests showed improvement. (Tr. 197). Consequently, plaintiff's attending physician noted that he planned to taper her dosage of Prednisone. (Tr. 197).

On July 6, 2005, Dr. Luc Vinh completed a physical residual functional capacity assessment at the request of the state disability agency. Dr. Vinh opined that plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; and push and/or pull without limitation. (Tr. 182). Dr. Vinh also opined that plaintiff can occasionally climb, balance, stoop, kneel, crouch, and crawl; that her visual impairments result in limited near and far acuity; and that she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and workplace hazards. (Tr. 183-184). To support his findings, Dr. Vinh noted that plaintiff "is still

able to do light household chores, care for her children, go shopping, and go[]out weekly with friends"; that "treatment for her impairments has been essentially routine and conservative in nature"; and that "[t]he medical records reveal that [her prescribed] medications have been relatively effective in controlling her symptoms." (Tr. 186).

On December 27, 2005, Dr. Ryan Ridges performed a consultative eye examination at the request of the state disability agency. The examination revealed that plaintiff's visual acuity was 20/20 in her right eye and "hand motion only" in her left eye. (Tr. 396).

On January 11, 2006, another physical residual functional capacity assessment was completed at the request of the state agency by Dr. William Amos. Dr. Amos opined that plaintiff is capable of lifting twenty pounds occasionally and ten pounds frequently; standing and/or walking for six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; and pushing and/or pulling without limitation. (Tr. 402). Dr. Amos also found that plaintiff has visual limitations, and that she should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 403-404). Like Dr. Vinh, Dr. Amos emphasized that plaintiff has described daily activities that are not significantly limited in relation to her alleged symptoms, and that the treatment for her impairments has been essentially routine and conservative in nature. (Tr. 406).

On May 11, 2006, plaintiff presented in the emergency department of Rockingham Memorial Hospital with an eye irritation. The attending physician noted that Ms. Williams had been "fired" from Dr. Tiedeman's practice because she had been non-compliant, and that she had not used prescribed eyedrops in the "last several years." (Tr. 454).

Ms. Williams was examined by Dr. Aklilu Degene, a pulmonologist in Harrisonburg, on June 5, 2006. While plaintiff reported experiencing shortness of breath for a year, Dr. Degene noted

that a February 3, 2006 chest x-ray showed improvement from a 2004 x-ray. (Tr. 447-448). Likewise, plaintiff's respiratory examination revealed good air entry bilaterally, normal breath sounds, and no wheezes or crackles. (Tr.449). A subsequent bronchial challenge test and chest x-ray were both normal. (Tr. 446, 507).

On July 19, 2006, Ms. Williams was referred to Dr. William Cale for a sleep evaluation. (Tr. 530). Although plaintiff complained of having difficulty falling asleep, extreme fatigue, and daytime sleepiness, she reported that her sleep problems did not interfere with her social life, and that her work situation was satisfactory. (Tr. 530-531). Based on the evaluation, Dr. Cale recommended a sleep study (Tr. 532), which ultimately revealed no evidence of sleep apnea, no oxygen desaturation of any significance, and no cardiac rhythm problem. (Tr. 511).

Plaintiff was subsequently referred to Dr. Mary Helen Witt for an evaluation of chronic mild leukopenia.[5] (Tr. 422). Dr. Witt opined that plaintiff's leukopenia was likely related to her sarcoidosis. (Tr. 423). An ultrasound of plaintiff's abdomen showed an enlarged spleen and several mild to moderately enlarged lymph nodes in the periportal region. (Tr. 416). Based on these findings, Dr. Witt recommended that plaintiff proceed with a bone marrow biopsy. (Tr. 416). The biopsy revealed granuloma consistent with sarcoidosis. (Tr. 418).

Ms. Williams returned to Dr. Cale on August 16, 2006. Although Dr. Cale noted that plaintiff continued to be symptomatic with shortness of breath, plaintiff's chest, on physical examination, was clear to percussion and auscultation with no labored breathing. (Tr. 526).

On September 13, 2006, Dr. Cale wrote a letter to plaintiff's attorney stating that plaintiff had very extensive sarcoidosis which involved her eye, lungs, and bone marrow. Dr. Cale opined

---

[5] Leukopenia is a reduction in the number of white blood cells. Dorland's Illustrated Medical Dictionary at 916.

8

that plaintiff's sarcoidosis could progress to severe debility, and that her degree of impairment from fatigue, shortness of breath, and poor sleep quality "is likely to interfere to a severe degree with any gainful employment in the foreseeable future." (Tr. 540).

On October 26, 2006, Dr. Robert McCormick wrote a letter to plaintiff's attorney. In the letter, Dr. McCormick stated that he first examined plaintiff on August 28, 2006, and that she had no new problems with her eyes or vision at that time. Dr. McCormick noted that glasses corrected the plaintiff's vision in her right eye to 20/20, but that she had only light perception in her left eye. (Tr. 542). Nonetheless, Dr. McCormick opined that "[t]he functional disability merely from the lack of useful vision in the left eye should be minimal." (Tr. 543). Dr. McCormick emphasized that plaintiff "has excellent vision in the right [eye]," and that "[a]s long as that remains intact she should be able to do most anything she wants." (Tr. 543).

During the administrative hearing on October 24, 2006, Ms. Williams testified that she is blind in her left eye, and that she has corrected vision in her right eye with glasses. (Tr. 599). Ms. Williams also testified that she is unable to work because of shortness of breath and excruciating pain. (Tr. 606-607). Plaintiff stated that she sometimes goes to the hospital for pain medication, and that she otherwise takes Tylenol or Advil. (Tr. 608). Plaintiff also testified that she lives alone with her three children, but that family members help her at least three times per week. (Tr. 609-610).

With regard to her educational background, Ms. Williams testified that she took college courses in mechanical design in the fall of 2001 and the spring of 2002 (Tr. 614-615), and that she took pharmacy assistant courses for a year, from June of 2005 to June of 2006 (Tr. 615-616).

Additionally, plaintiff testified that she completed a year-long hair dressing apprenticeship in 2002 or 2003. (Tr. 620).

Dr. Earl Glosser testified at the hearing as a vocational expert. The Law Judge posed the following hypothetical to Dr. Glosser:

> We'll be dealing with a person who can do light work, lift and carry 20 pounds occasionally, 10 pounds frequently. Stand or walk at least six hours in an eight-hour day. Sit at least six hours in an eight-hour day. And the person should avoid even moderate exposure to the asthma, lung irritants, fumes, odors, dust, gases, poor ventilation. And the work must accommodate having vision in only one – one eye.

(Tr. 629). In response to the hypothetical, Dr. Glosser testified that an individual with such limitations could perform plaintiff's past work as a fast food cashier/counter clerk, quality control inspector, cosmetology assistant, and general laborer. (Tr. 630). Dr. Glosser further testified that these jobs could still be performed if the individual was limited to only occasional postural activities, and if the individual needed to avoid concentrated exposure to hazards such as moving machinery and unprotected heights. (Tr. 630-631).

In deciding that Ms. Williams is not totally disabled, the Law Judge found that plaintiff's testimony regarding the debilitating effects of her sarcoidosis was not entirely credible, emphasizing that her testimony was inconsistent with the medical evidence on record. The Law Judge noted that plaintiff's treatment regimen has been relatively routine and conservative in nature, and that prescribed medications have been effective in controlling her symptoms. (Tr. 20). The Law Judge also emphasized that plaintiff's allegations of total disability were inconsistent with her daily activities, which have included attending school, working past her alleged onset date of disability,[6]

---

[6] Pursuant to 20 C.F.R. §§ 404.1571 and 416.971, evidence that a claimant has engaged in work activity "may show that you are able to do more work than you actually did," even if the work did not constitute substantial gainful activity.

10

and caring for her three young children. (Tr. 21). Having reviewed the record, the court finds that the Law Judge's decision to discount certain portions of Ms. Williams' testimony is supported by substantial evidence.

The court also finds substantial evidence to support the Law Judge's decision to assign lesser weight to the September 13, 2006 letter from Dr. Cale, in which he opined that plaintiff's degree of impairment is "likely" to interfere with any gainful employment in the "foreseeable future." (Tr. 540). The court agrees with the Commissioner that Dr. Cale's opinion is more appropriately characterized as a prediction regarding the future effects of plaintiff's sarcoidosis, as opposed to an assessment of her current functional capacity, and that the opinion appears to be premature in light of plaintiff's current symptoms. For instance, Dr. Cale's opinion concerning the degree of limitation attributable to plaintiff's breathing problems is inconsistent with his own clinical findings from August of 2006, which showed that plaintiff's chest was clear to auscultation with no labored breathing, as well as the plaintiff's June 2006 chest x-ray and bronchial challenge test, both of which were normal. Dr. Cale's opinion is also inconsistent with the opinions of Dr. Vinh and Dr. Amos, the state agency physicians. The Law Judge correctly observed that the opinions of the state agency physicians regarding plaintiff's impairments and her work-related limitations are supported by substantial evidence in the record, including the extensive examination reports from plaintiff's treating physicians at UVA, which indicate that plaintiff was doing generally well despite her impairments and that her pulmonary symptoms consistently responded favorably to medication. Accordingly, the court concludes that the Law Judge's decision to discount the opinion letter from Dr. Cale, and to rely instead on the opinions of the state agency physicians, is supported by the record. See 20 C.F.R. §§ 404.1527(d) and 420.927(d).

11

Having found substantial evidence to support the Commissioner's determination that Ms. Williams' impairments do not render her totally disabled, the court concludes that the Commissioner's final decision must be affirmed. In affirming the Commissioner's final decision, the court does not suggest that Ms. Williams is totally free of pain and discomfort. However, it must be recognized that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996). It appears to the court that the Administrative Law Judge gave full consideration to all of the subjective factors in adjudicating plaintiff's claims for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 19th day of March, 2008.

_____
United States District Judge